**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| JAMON DEMETRIUS JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV619-091 |
| ) | |
| COMMISSIONER TIMOTHY C. ) | |
| WARD and WARDEN TERRENCE ) | |
| KILPATRICK, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff Jamon Demetrius Jackson filed this lawsuit challenging the conditions of his confinement at Smith State Prison. *See* doc. 2. The Court screened his initial Complaint pursuant to 28 U.S.C. § 1915A, recommended dismissal of his claims regarding inadequate seating for meals, ventilation, access to the courts, and failure to protect, and approved for service his claim of interference with his right to worship. Doc. 12 at 23-24. Although he did not sufficiently plead his claims related to prolonged segregation, lack of outdoor recreation, or interference with communications, he was afforded an opportunity to amend those claims. *Id.* The Court also directed that

1

the surviving claims would be served after screening of plaintiff's amended complaint. *Id.* at 24. Plaintiff filed his Amended Complaint, doc. 16, which is due to be screened. 28 U.S.C. § 1915A(b). He has also filed a Motion for Prisoner Release, doc. 19, and a Motion for Preliminary Injunction, doc. 20, that must be resolved.

The prior Report and Recommendation (R&R) recommended that Plaintiff's claims related to inadequate seating for meals, ventilation, access to the courts, and failure to protect be dismissed. Doc. 12 at 1. Plaintiff did not object to that R&R. *See generally* docket. His amended complaint does not include those claims. *See* doc. 16. An amended pleading "supersedes the former pleading" such that "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (internal quotation marks and citation omitted); *see also Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) (citations omitted) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). Since the operative complaint no longer includes the claims that the R&R recommended be dismissed, that recommendation is no

longer necessary.  The Clerk of Court is **DIRECTED** to **VACATE** as moot the portions of the R&R recommending dismissal.  Doc. 12.

## I.    Amended Complaint

In his amended complaint, plaintiff adds "Defendant R. Shepard Regional Director in his Individual and Official Capacity" as a defendant along with the previously named defendants Timothy C. Ward and Terence Kilpatrick.  Doc. 16 at 1.  He again alleges that his right to practice his religion has been impeded by the prison's failure to provide appropriate meals during the month of Ramadan, *id.* at 3, 5, its prohibition of Muslim "Friday religious services" and "study groups," *id.* at 4, and its mandate that he cut his facial hair in a way that conflicts with the teachings of his faith, *id.* at 6.  He claims that defendants Ward, Kilpatrick, and Shepard are all responsible for the offending policies.  *Id.* at 3-6.  The Court has already determined that plaintiff's interference with religious practices claim survives screening.  *See* doc. 12 at 18-19. That determination stands, and these claims may proceed.

Plaintiff next discusses his time on "tier two administrative segregation lockdown," which he contends lasted "over two years," in violation of GDC policy.  Doc. 16 at 7.  He claims that he was treated

differently from the general prison population because he "went without meals on occasions in May 2019," was forced to shave his facial hair in contradiction to his Muslim faith, was threatened bi-weekly with disciplinary action, was subject to "unreasonable routine body cavity searches," and had "no recreation privileges." *Id.* He alleges that the defendants all acted together to institute this "custom." *Id.*

As the Court previously informed plaintiff, "[m]ere deviations from policy do not amount to constitutional violations." Doc. 12 at 13. He was instructed that his claim, construed as an alleged violation of the Fourteenth Amendment, *might* be able to survive scrutiny if he more fully explained the liberty interest he contends was violated without due process. *Id.* at 13-14. His amended complaint suggests that he was treated differently from the general prison population while he was administratively segregated, and that he went without meals, was denied recreation, and was subjected to "routine body cavity searches" for an extended period of time. Doc. 16 at 7. That is sufficient, at this point in the litigation, to suggest that plaintiff might have been subjected to "atypical and significant hardship" such that he has a protected liberty interest in avoiding assignment to administrative segregation.

*Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005); *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007).

To satisfy due process before violating a prisoner's protected liberty interest, the prison must provide "(1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals." *Young v. Jones*, 37 F.3d 1457, 1459–60 (11th Cir.1994).  Plaintiff's amended complaint is silent as to what proceedings, if any, preceded his time in the administrative segregation lockdown. *See* doc. 16 at 7.  Therefore, as in *Wallace*, "it is not clear beyond a doubt that [the plaintiff] has failed to allege a due process violation." *Wallace*, 229 F. App'x at 831.  Since the plaintiff has asserted other claims that survive screening, the Court will approve his claim for a due process violation, too.  That should not suggest that plaintiff will ultimately succeed on this claim; it only means that it is not subject to dismissal at this time.

Next, plaintiff alleges that the defendants have prevented him from making phone calls and have disconnected the wi-fi required to sync his tablet to the "JPAY kiosk," interfering with his ability to communicate with his family and friends and frustrating his attempts to access "preordered daily newsstand articles, music and emails." Doc. 16 at 8-9. He also claims that his mail has "frequently . . . been stopped," and that he will go "months at a time" without mail going in or out. *Id.* at 8. He is also allegedly denied visitation with family and friends. *Id.* He claims that this is all a result of "severe understaffing" and that the defendants have "failed to provide available resources" to the prison. *Id.*[1]

Despite their incarceration, prisoners do retain a constitutional right to communicate with people outside of the prison. *Pope v.*

---

[1] In addition to his allegations about the defendants' failure to provide available resources, plaintiff also alleges that the defendants "failed to stop subordinates from acting unlawfully." Doc. 16 at 8-9. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014) (internal quotation and citation omitted). "[T]o hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* Standing alone, plaintiff's allegation that the defendants are responsible for the unlawful actions of their subordinates might not be sufficient. But plaintiff alleges more; he contends that the defendants have "instituted a custom," doc. 16 at 7, and "failed to provide available resources," *id.* at 9. Those allegations are enough, at this point, to merit service of his complaint on the named defendants.

*Hightower*, 101 F.3d 1382, 1385 (11th Cir.1996).  But this right is not absolute.  *See Washington v. Reno*, 35 F.3d 1093, 1099–1100 (6th Cir. 1994); *Pitsley v. Ricks*, 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) ("Courts considering prison telephone restrictions have agreed that an inmate has no right to unlimited telephone use.").  Instead, a prisoner's right to phone access is "'subject to rational limitations in the face of legitimate interests of the penal institution.'"  *Padgett v. Mosley*, 2007 WL 2409464, at *8 n.2 (M.D. Ala. Aug. 20, 2007) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).  Moreover, "[a] prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him." *Acosta v. McGrady*, 1999 WL 158471, at *7 (E.D. Pa. March 22, 1999); *see also Pope*, 101 F.3d at 1385 (noting that prisoner had "alternate means" of exercising First Amendment right to communicate with family and friends "because he could receive visitors and correspond with virtually anyone he wished").

Plaintiff's allegations, which must be accepted as true at this early stage, *see Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003), are sufficient to allege a claim for violation of his First Amendment rights. He does not solely claim that he has been deprived of using the telephone;

instead, he claims that he is not able to contact his friends or family via telephone or in-person visitations, and that the internet, also a potential method of communication, is disconnected.  Doc. 16 at 8-9.  He also claims that mail is unreliable, that it is frequently stopped and will be stalled for months at a time.  *Id.*  He contends that the reason for these interferences in his ability to communicate is understaffing at the hands of the defendants.  *Id.*  Those allegations are enough, if only for now.  The defendants must respond.

Finally, plaintiff's amended complaint expands on his claim that he has been denied outdoor recreation.  *See* doc. 16 at 10.  He explains that he has been denied recreation privileges for "months at a time," and that the defendants have put the prison on "lockdown" and "withheld . . . proper recreation."  *Id.*  He is not allowed recreation even when he is in the general prison population.  *Id.*  He claims that he has no alternative forms of recreation.  *Id.*

The Eleventh Circuit has held that "'complete denial of outdoor exercise, although harsh, does not violate the Eighth Amendment' when accompanied by 'penological justification.'"  *Stallworth v. Wilkins*, 802 F. App'x 435, 444 (11th Cir. 2020) (quoting *Bass v. Perrin*, 170 F.3d 1312,

1316-17 (11th Cir. 1999)).  Plaintiff alleges that the defendants have denied him access to outdoor recreation because of "chronic hyper-overcrowding, understaffing, [and] lack of security" at the prison.  Doc. 16 at 10.  Based on the Eleventh Circuit's analysis in *Stallworth*, absent penological justification, deprivation of outdoor recreation might very well be violative of the Eighth Amendment.  802 F. App'x at 444. Whether prison officials may be able to present a "penological justification" is a question for another day.  At this point, Plaintiff's allegations are sufficient to survive screening.

Since plaintiff's Amended Complaint alleges claims that survive screening, it may be served, and he is entitled to service by the United States Marshal.  *See* Fed. R. Civ. P. 4(c)(3).  Although Rule 4's Marshal-service mandate is clear, the Court's interest in preserving resources and minimizing burden on the Marshal's staff permit first attempting to secure defendants' waiver of formal service, as contemplated by Fed. R. Civ. P. 4(d) and this Court's Local Rules.  *See* S.D. Ga. L. Civ. R. 4.5 ("In cases in which the plaintiff is authorized to proceed [IFP] . . ., unless personal service by the Marshal is ordered by the Court, the Marshal may utilize any other form of service or waiver authorized by Federal Rule of

Civil Procedure 4." (emphasis added)); *see also* Charles Alan Wright, Arthur R. Miller, *et al.*, 4A Fed. Prac. & Proc. Civ. § 1090 (4th ed. 2017) (noting that the policy supporting Marshal service for IFP plaintiffs "is to provide service for those who cannot afford private service," but "the plaintiff [or, in this case, the Clerk] should first attempt to make service by some other means provided for in the rule; only when this proves unfeasible" should service by the Marshal be used).  Other Courts have also directed that Court staff make an attempt to secure defendant's waiver of formal service before requiring the Marshal to effect formal service.  *See, e.g., Dunn v. Federal Express*, 2014 WL 1028949, at *2–3 (N.D. Ga. Mar. 14, 2014) (directing attempt to secure service waiver, and directing USMS service "[i]n the event Defendant does not return the Waiver of Service form to the Clerk of Court" within the specified period).

Therefore, the Clerk is **DIRECTED** to prepare a service waiver package for the defendants, Commissioner Timothy C. Ward, Regional Director R. Shepard, and Warden Terence Kilpatrick, to be sent to the following publicly available addresses:

Timothy C. Ward
Commissioner
Georgia Department of Corrections
Department Headquarters
7 MLK Jr Drive, Suite 543
Atlanta, Georgia 30334

R. Shepard
Regional Director
Georgia Department of Corrections
Southeast Regional Office
154 1st Ave South
Reidsville, GA 30453

Warden Terence Kilpatrick
Smith State Prison
9676 Hwy 301 North
Glennville, Georgia 30427

*See* Georgia Department of Corrections, *available at* http://www.dcor.state.ga.us. That package must include, for each defendant: a Rule 4 notice of Lawsuit and Request to Waive Service of Summons (prepared by the Clerk); two copies of the Waiver of the Service of Summons form (prepared by the Clerk); an envelope addressed to the Clerk of Court with adequate first-class postage for use by the defendant for return of the waiver form; copies of the Complaint, doc. 2, Amended Complaint, doc. 16, the Court's prior Order and Report and Recommendation, doc. 12, and this Order and Report and Recommendation.

11

Next, the Clerk shall mail the service waiver package to the defendants at the above addresses, along with a courtesy copy to the Georgia Department of Corrections' Office of Legal Services. *See* http://www.dcor.state.ga.us/Divisions/ExecutiveOperations/Legal. The defendants are under a duty to avoid unnecessary costs of personally serving the summons. If they fail to comply with the mailed request for waiver of service, they must bear the costs of personal service, unless good cause can be shown for failure to return the Waiver of Service form. *See* Fed. R. Civ. P. 4(d)(2). Should any defendant fail to waive service within sixty days following the date the service waiver package is mailed (the Clerk shall docket that act), the Clerk will prepare and transmit a service package to the Marshal. The service package must include a fully completed USM 285 form, the summons, one copy of the Complaint, doc. 2, one copy of the Amended Complaint, docs. 16, one copy of the Court's prior Order and Report and Recommendation, doc. 12, and one copy of this Order and Report and Recommendation. Upon receipt of the service package, the Marshal is **DIRECTED** to promptly attempt to personally serve the defendants.

## II.    Motion for Prisoner Release

Plaintiff asks for a "Prisoner Release Order and Three Judge Court," citing to 28 U.S.C. § 3626(a)(3).  Doc. 19.  That statute cautions that, in the context of a civil action challenging prison conditions, "no court shall enter a prisoner release order unless – (i) a court has previously entered an order for less intrusive relief that has failed to remedy he deprivation of the Federal right sought to be remedied through the prisoner release order; and (ii) the defendant has had a reasonable amount of time to comply with the previous court orders."  28 U.S.C. § 3626(a)(3)(A).  Since Plaintiff has not demonstrated that either of these pre-conditions have been met, *see* doc. 19, his motion should be **DENIED**. Doc. 19.

## III.   Motion for Preliminary Injunction

Plaintiff also seeks a preliminary injunction.  Doc. 20.  In it, he repeats his allegations that, during Ramadan, his meals did not meet caloric requirements, were often served cold and without a beverage, and were not served during the times when his religious observations would permit him to eat.  *Id.* at 1.  He also reasserts his complaints about the prison's prohibition on his religious study group and its requirement that

13

he cut his facial hair in a way that conflicts with his religious practice. *Id.* at 2.

A preliminary injunction can only be issued, "on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). There is no indication that plaintiff has served any defendant in this action. *See* Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served ..."). The motion also omits any certificate of service, suggesting that, notwithstanding possible unattested service of the original complaint, no opposing party has been provided notice. See Fed. R. Civ. P. 5(d)(1)(B). Since there is no indication of the required notice, to the extent that the motion seeks a preliminary injunction, it should be **DENIED** as procedurally improper. Doc. 20.

Moreover, plaintiff's motion fails substantively. Injunctive relief is a drastic remedy and its granting rests in the discretion of the district court. *See Carillon Imp., Ltd. v. Frank Pesce Intern. Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted). In order to warrant the granting of such relief, the movant must establish: "(1) a substantial likelihood of success on the merits, (2) that irreparable injury will be suffered if the relief is not granted, (3) that the threatened injury

outweighs the harm the relief would inflict on the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Long v. Sec'y, Dep't of Corrs.*, 924 F.3d 1171, 1176 (11th Cir. 2019). Even read charitably, plaintiff's pleadings and motions fail to adequately address any of these factors.

Plaintiff's request for injunctive relief is derivative of his interference with religious practices claim. Though he has adequately alleged sufficient facts to merit service of that claim on the defendants, he has not sufficiently argued that he will ultimately succeed on the merits. As the Court has already instructed, for plaintiff to successfully demonstrate a violation of the First Amendment's Free Exercise Clause, he must "show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief." Doc. 12 at 17-18 (quoting *Hoke v. Lyle*, 2016 WL 4197590, at *6 (S.D. Ga. Aug. 8, 2016)). While he has met his initial pleading burden, he has not shown that the prison's practices are not reasonably related to any legitimate penological interest

or security measure.  Whether he can ultimately make that showing is a question for another day, but, for now, he has not demonstrated a likelihood of success on the merits such that the extraordinary remedy of preliminary injunctive relief is proper.

To justify the "extraordinary and drastic remedy" of a preliminary injunction, plaintiff must "*clearly establish*[ ] the burden of persuasion as to each of the four prerequisites."  *Sigel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (emphasis added) (internal quotation marks and citation omitted).  Under that standard, Jackson has also not sufficiently demonstrated the irreparable injury that he might suffer without a preliminary injunction, even if his allegations are sufficient to survive screening.  *See generally* doc. 20.  Having not sufficiently demonstrated an irreparable injury, plaintiff has also not demonstrated that the costs of not granting his injunctive request outweigh the potential burden on the prison or the public interest.  Therefore, plaintiff's motion for injunctive relief should also be **DENIED** on the merits.  Doc. 20.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may

file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 1st day of March, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA