# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

JAMON DEMETRIUS JACKSON, )
)
Plaintiff, )
)
v. )          CV619-091
)
COMMISSIONER TIMOTHY C. )
WARD, *et al.*, )
)
Defendants. )

## ORDER AND REPORT AND RECOMMENDATION

The Court approved several of *pro se* plaintiff Jamon Demetrius
Jackson's claims for service. *See generally* doc. 24. Defendants have
appeared and moved to dismiss Jackson's Complaint, and all of its claims,
asserting that he is precluded from proceeding *in forma pauperis* and
failed to exhaust his administrative remedies. *See* doc. 27 at 5-11.
Jackson has responded, albeit not explicitly.[1]  Docs. 28, 29 & 32. For the

---

[1] Jackson has not filed any explicit opposition to the defendants' Motion to Dismiss,
nor has he explicitly referred to that motion in his most recent filings.  He has,
however, filed a number of "declarations," that, charitably, respond to defendants'
arguments.  *See generally* docs. 28, 29, 32, 34 & 37.  Since Jackson has not otherwise
responded in opposition to the defendants' Motion to Dismiss, *see* doc. 27 (filed April
27, 2022); S.D. Ga. L. Civ. R. 7.5 (requiring response to motions within fourteen days),
the motion stands unopposed.  *See* S.D. Ga. L. Civ. R. 7.5 ("Failure to respond within
the applicable [fourteen-day] time period shall indicate that there is no opposition to
a motion.").  The most recent "declaration" was filed after the response period closed.
*See* doc. 37 at 2 (signed May 18, 2022); *see also, e.g., Williams v. McNeil*, 557 F.3d

1

reasons explained below, defendants' Motion should be **GRANTED**, in part, and **DENIED**, in part. Doc. 27. Jackson has also filed motions for default judgment and sanctions. Docs. 30 & 35. As those motions are meritless, they should also be **DENIED**.

## I.   PLRA Strikes

Under the Prison Litigation Reform Act (PLRA), an indigent prisoner is barred from proceeding IFP after filing three meritless actions. 28 U.S.C. § 1915(g). The relevant provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

1287, 1290 n. 2 (11th Cir. 2009) (under the prison mailbox rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."). However, even unopposed, the Court must consider the merits of defendants' motion. *See, e.g., Moore v. Camden Prop. Tr.*, 816 F. App'x 324, 330 (11th Cir. 2020) (citing *Giummo v. Olsen*, 701 F. App'x 922 (11th Cir. 2017)). Accordingly, the Court has reviewed the "declarations," and considered whether their contents address the defects identified in defendants' motion. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (discussing liberal construction afforded to *pro se* pleadings); *Retic v. United States*, 215 F. App'x 962, 964 (11th Cir. 2007) ("Federal courts sometimes will ignore the label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place within a different legal category.").

*Id.* "The relevant inquiry to determine whether § 1915(g) bars a prisoner's complaint is whether he had three or more strikes at the time that he filed his civil action or appeal." *Daker v. Keaton*, 787 F. App'x 630, 632 (11th Cir. 2019). The Eleventh Circuit has made it emphatically clear that "[t]hree specific grounds render a dismissal a strike: 'frivolous,' 'malicious,' and 'fails to state a claim upon which relief may be granted.'" *Daker v. Comm'r, Ga. Dept. of Corrs.*, 820 F.3d 1278, 1283 (11th Cir. 2016). Moreover, "these three grounds are the *only* grounds that can render a dismissal a strike." *Id.*

Defendants identify three of Jackson's prior cases that they contend count as "strikes" under § 1915(g). *See* doc. 27 at 8. It is clear that Jackson had at least two strikes before he filed this case. First, in 2016, the United States District Court for the Middle District of Georgia dismissed a complaint Jackson filed "for failure to state a claim." *Jackson v. McLaughlin*, 5:16-cv-142, doc. 29 at 8 (M.D. Ga. Oct. 26, 2016). In 2018, the Eleventh Circuit dismissed an appeal he filed as "frivolous." *See Jackson v. McLaughlin*, 17-11301-C (11th Cir. Mar. 30, 2018). The third case that defendants cite, however, was not dismissed until after this case was filed. *See Jackson v. Paine Webber Group*, 5:19-cv-293, doc.

3

16 at 6-7 (M.D. Ga. Jan. 15, 2020) (dismissing complaint, alternatively, for "failing to state a claim," and "as frivolous").  Although that dismissal does count as a strike, it does not for purposes of this case.  *See Dollar v. Coweta Cnty. Sheriff Office*, 510 F. App'x 897, 900 (11th Cir. 2013); *Taylor v. Florida Dept. of Corrs.*, 440 F. App'x 915, at *1 (11th Cir. Sept. 22, 2011).  *Compare*  5:19-cv-293, doc. 17 (M.D. Ga. Jan. 16, 2020) (Judgement dismissing case), *with* doc. 2 at 4 (original complaint signature-filed[2] Sept. 16, 2019).  The Courts that have subsequently recognized that Jackson has three strikes relied on those same cases.  *See* doc. 27 at 8 (citing, *inter alia.*, *Jackson v. State of Georgia*, 5:20-cv-252, doc. 5 (M.D. Ga. Sept. 22, 2020)).  While Jackson may now be a "three-striker," he was not at the time he filed this Complaint.

Accordingly, to the extent that defendants argue that Jackson's Complaint should be dismissed on § 1915(g)-strikes grounds, the Motion should be **DENIED**.  Doc. 27, in part.

---

[2] Under the prison mailbox rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir. 2009).  Courts assume, "[a]bsent evidence to the contrary, . . . that a prisoner delivered a filing to prison authorities on the date that he signed it."  *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

## II.    PLRA Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of available remedies is mandatory; "[a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 578 U.S. 632, 638-39 (2016).  The statute's plain language "means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." *Leal v. Georgia Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (internal quotation marks and citation omitted); *see also McDaniel v. Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006) (grievances and administrative appeals submitted after a complaint was filed "cannot be used to support [a] claim that [a plaintiff] exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of [the] suit, and, thus, must have occurred before the suit was filed." (citation omitted)).

"To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal quotation marks and citation omitted). "[C]ourts cannot excuse a failure to exhaust available administrative remedies because 'special circumstances' exist or because the available procedures are futile or inadequate." *Garcia v. Obasi*, 2022 WL 669611, at *3 (11th Cir. Mar. 7, 2022) (citing *Ross*, 578 U.S. at 638-39, *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000)). "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits [of the underlying claims] and the parties have sufficient opportunity to develop a record." *Bryant,* 530 F.3d at 1376.

When a defendant files a motion to dismiss based on a prisoner's failure to exhaust administrative remedies, the Court follows a two-step process. *See Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008). As the Eleventh Circuit has explained:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's

response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.  [Cit.] . . . If the complaint is not subject to dismissal at the first step, . . ., the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. [Cit.]  The defendants bear the burden of proving plaintiff has failed to exhaust his administrative remedies.

*Id.* at 1082 (citations omitted).  "[O]nce [the defendant's] burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him."  *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020).

Defendants argue that Jackson's claims should be dismissed because he failed to exhaust available administrative remedies before he filed suit.  *See* doc. 27 at 2-7.  Jackson's original Complaint, which was improperly filed on behalf of multiple plaintiffs, *see* doc. 1; *see also Jackson v. Ward*, CV619-085, doc. 3 (S.D. Ga. Sept. 24, 2019), alleges that the original five plaintiffs "used the prisoner grievance procedure available at Smith State Prison to try and solve the problem," doc. 2 at 2. Jackson's Amended Complaint omits any allegation concerning his exhaustion of administrative remedies, but does not deny that a

procedure existed.   *See generally* doc. 16.   Jackson's declarations explicitly refer to the grievance procedure, and his use of it, several times. *See* doc. 29 at 2 ("I filled out grievances and state level failed to provide a resolution."); doc. 32 at 1 (referring to the two-grievance limit), 2 (stating that "lockdown" precluded "fil[ing] a grievance in a timely fashion . . . ."); doc. 34 at 5 (stating that he "got tired of complaining, or had (2) active grievances already.").   Finally, Deputy Warden Warren's declaration establishes the existence of a grievance procedure at Smith State Prison, and Jackson's use of that procedure.   *See* doc. 27-1 at 1-4.   There is, therefore, no dispute that a grievance procedure was, at least, nominally available to Jackson.

Given the existence of a grievance procedure, the question becomes whether Jackson exhausted the remedies it provided before he filed his Complaint.   The original Complaint alleges only that "[p]*laintiffs* . . . used the prisoner grievance procedure available at Smith State Prison."   Doc. 2 at 2 (emphasis added).   As defendants point out, that allegation does not "state that *he* [*i.e.* Jackson] was the one who exhausted the grievance process."   Doc. 27 at 4.   Taking Jackson's allegations as true, he has not

alleged that he exhausted available administrative remedies.[3]   To the extent that there is any ambiguity, Deputy Warden Warren's declaration discusses the record of grievances Jackson filed concerning conditions at Smith State Prison prior to the date he filed the original Complaint.   *See* doc. 27-1 at 4.   She states that none of the pre-suit grievances were properly exhausted.   *See id.* (noting no record that Jackson appealed any of the grievances); *Anderson v. Donald*, 261 F. App'x 254, 256 (11th Cir. 2008) (inmate who did not "appeal[ ] his grievable claims . . . failed to comply with the PLRA's mandatory exhaustion requirement.").   Given the factual allegations by the parties, and taking Jackson's allegations as true, the Court can discern no dispute that he failed to exhaust available

---

[3] Jackson's most recent "declaration" does not discuss his grievances or the grievance procedure.   *See* doc. 37 at 1-2.   It does, however, attach copies of various documents related to grievances.   *See id.* at 9-19.   For purposes of the Court's analysis of exhaustion, the documents postdating the filing of the Complaint on September 16, 2019, can be disregarded.   *See, e.g., McDaniel*, 194 F. App'x at 613 ("[G]rievances and appeals [submitted after filing the original complaint] cannot be used to support [a plaintiff's] claim that he exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of his suit, and, thus, must have occurred before the suit was filed."); *see also Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.").   The only grievances referenced in the attached documents that predate the original complaint are Grievance # 280684, *see* doc. 37 at 9-10.   The remaining documents all postdate the Complaint.   Deputy Warden Warren's declaration acknowledges that pre-suit grievance, but states that she "found no record of inmate Jackson appealing the warden's decision to the Central Office."   Doc. 27-1 at 4; *see also id.* at 27.

administrative remedies.    Defendants' Motion to Dismiss should,
therefore, be **GRANTED**.  Doc. 27, in part.  *See, e.g., Turner*, 541 F.3d at
1082.

Despite the Court's conclusion that Jackson's Amended Complaint
should be dismissed at the first step of the *Turner* analysis, given the
liberal construction afforded to *pro se* pleadings, Jackson's informal
approach to this litigation, and the fact that defendants have argued for
dismissal, in the alternative, at the second *Turner* step, *see* doc. 27 at 4,
the Court proceeds to conduct that analysis.  As discussed above, the
Court can readily conclude that Jackson failed to exhaust administrative
remedies.  *See, e.g.,* doc. 27-1.  The burden, therefore, shifts to Jackson to
"demonstrate that the grievance procedure was 'subjectively' and
'objectively' unavailable to him."  *Geter*, 974 F.3d at 1356.  *Cf. Ross*, 578
U.S. at 648 ("The only limit to § 1997e(a)'s mandate is the one baked into
its text: An inmate need exhaust only such administrative remedies as
are 'available.'").

As discussed above, Jackson has not made any explicit argument or
allegation that the grievance procedure was not available.  The closest he
comes to such an allegation is his identification, in one of his

declarations,[4] of various procedural and logistical problems with the grievance procedure. *See* doc. 32 at 1-2 (alleging that inmates are limited to "two open (active) grievances at a time," and that staffing and mail issues meant "you couldn't even file a grievance in a timely fashion . . . ."). He also states that he was discouraged from filing grievances and appeals by officials' "harsh language," but the discouragement left him "having to result [sic] in getting form off the desk." *Id.* at 3. Even charitably construed, none of Jackson's claims discharge his burden.

None of the difficulties Jackson identifies in filing grievances, the two-grievance limit, or the "harsh language," render the grievance procedure "unavailable." The Eleventh Circuit has expressly noted that the Georgia Department of Correction's grievance policy accommodates untimely grievances, subject to a showing of "good cause." *See Bryant*, 530 F.3d at 1378-79. Where a prisoner "could have filed an out-of-time grievance and then showed good cause for its untimeliness," but did not

---

[4] Although the Court refers to Jackson's claims in his declarations as "allegations," it must be noted that the "declarations," at least facially, constitute proper "unsworn declarations," pursuant to 28 U.S.C. § 1746. The declaration that includes the claims most plausibly relevant to the exhaustion question includes the statement "I declare under penalty of perjury that the foregoing is true and correct." Doc. 32 at 4. That language satisfies the requirements of § 1746(2), for declarations executed within the United States. As such, Jackson's declarations constitute competent evidence. *See* 28 U.S.C. § 1746.

the prisoner has "failed to exhaust an administrative remedy that was available to him." *Id.* at 1379.  The grievance policy attached to Warden Warren's declaration includes a "good cause" exception, apparently identical to the policy considered in *Bryant*.  *See* doc. 27-1 at 13 (grievances filed outside of the ten-day period to file a grievance, "may only be considered upon Good Cause.").  The Eleventh Circuit has also considered, and rejected, the argument that the two-grievance limit renders the process "unavailable" for purposes of the PLRA.  *See Pearson v. Taylor*, 665 F. App'x 858, 867-68 (11th Cir. 2016).  Even construing his declarations liberally, therefore, Jackson's complaints about delays and the two-grievance limit do not render the grievance process "unavailable."

Threats by prison officials may, in some circumstances, render a grievance procedure "unavailable."  In *Turner*, the Eleventh Circuit explained that "a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy 'unavailable,' and thus lift the exhaustion requirement as to the affected parts of the process if both these conditions are met: (1) the threat actually did deter the plaintiff

inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance procedure that the inmate failed to exhaust."  541 F.3d at 1085.  Jackson's vague reference to "harsh language" and not providing him with forms, does not clearly assert a sufficiently serious threat.  The more obvious reason the "threats" did not render the grievance procedure unavailable to Jackson is that their only result was that he had to "get[ the] form off [the] desk."  Doc. 32 at 3.  Whatever the character of the "threats," therefore, they did not actually deter Jackson.

Jackson's declaration that "Counselor Atkinson on Tier 2 . . . has argued 'nothing on their tier is grievable,' along with Kilpatrick Warden response saying the exact same," doc. 32 at 3, more plausibly implicates the "availability" of the grievance procedure.  Liberally construed, that allegation asserts that the grievance process was "unavailable" to Jackson because he was expressly told that it was not.  The Supreme Court recognized in *Ross* that administrative remedies were not "available" and exhaustion not required "when prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Ross*, 578 U.S. 644. This Court has recognized that similar allegations may be sufficient to avoid dismissal under *Turner*. *See Garrett v. Meeks*, 2019 WL 1440335, at *4 (S.D. Ga. Mar. 8, 2019) (finding allegation of a counselor's statement that a particular issue was not grievable was sufficient to allege process was not available); *see also Miller v. Tanner*, 196 F.3d 1190, 1194 (11th Cir. 1999) (plaintiff "was not required, in order to exhaust his administrative remedies, to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded.").

In order to bear his burden, Jackson must "demonstrate that the grievance procedure was '*subjectively*' and '*objectively*' unavailable to him." *Geter*, 974 F.3d at 1356 (emphasis added). The Court has been unable to find an explanation of the "subjective" and "objective" showings referred to in *Geter*. However, *Geter* itself cites to *Turner*, summarizing it as "holding that a threat renders a prison grievance system unavailable when '(1) the threat *actually did* deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is *one that would deter a reasonable inmate* of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance

process that the inmate failed to exhaust.'"  *Geter*, 974 F.3d at 1356
(emphasis added).  It appears, therefore, that to make the requisite
showing, an inmate plaintiff must show a circumstance that both (1)
"actually did" prevent him from exhausting an available procedure and
(2) is "one that would [prevent] a reasonable inmate" from exhausting an
available procedure.

Even assuming that Jackson's declaration implies that the
statements about the grievability of the issues *subjectively* prevented him
from lodging grievances, it does not establish that such statements would
prevent a reasonable inmate from doing so.  Moreover, the explicit
grievance procedures provide that, subject to enumerated exceptions, "an
Offender may file a grievance about *any* condition, policy, procedure, or
action or lack thereof that personally affects the Offender."  Doc. 27-1 at
9 (emphasis added).  None of those enumerated exceptions even suggest
a blanket exception based on a prisoner's classification.  *See id.* at 9-10.
Without further explanation from Jackson about *why* he apparently
accepted the representation that "Nothing on the Tier is grievancable
[sic]," doc 32 at 3, the Court cannot conclude that he has demonstrated

that such a representation would prevent "a reasonable inmate" from filing a grievance, even if it actually prevented Jackson from doing so.

Accordingly, even if Jackson's Amended Complaint were not subject to dismissal at the first *Turner* step, the Court should find that defendants have borne their burden of proving that Jackson failed to exhaust his administrative remedies, *see, e.g., Turner*, 541 F.3d at 1082, and Jackson has failed to bear his burden to "demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him," *Geter*, 974 F.3d at 1356. Those findings provide an alternative basis upon which defendants' Motion to Dismiss should be **GRANTED**. Doc. 27, in part.

## III.   Jackson's Motions

In addition to his declarations, Jackson has also filed a Motion for Default Judgment, doc. 30, and a Motion for Sanctions, doc. 35. Defendants have responded in opposition to the Motion for Default Judgment. Doc. 36. The deadline for defendants to respond to the Motion for Sanctions has not yet expired. *See* doc. 35; *see also* S.D. Ga. L. Civ. R. 7.5. Since, as explained below, that Motion is meritless, however, the Court need not wait for defendants' response.

Federal Rule 55 governs default judgments. *See* Fed R. Civ. P. 55. An "entry of default," is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a). Before default may be entered, among other requirements, the court must have personal jurisdiction over the defendants. *See CNH Capital Am., LLC v. Southeastern Aggregate, Inc.*, 2009 WL 3172353, at *3 (S.D. Ga. Oct. 1, 2009) (citing *Patray v. Northwest Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996)). "Serving a summons or filing a waiver of service establishes personal jurisdiction over a[n otherwise proper] defendant . . . ." Fed. R. Civ. P. 4(k).

Defendants point out, somewhat confusingly, that they "filed their motion to dismiss (doc. 27) on April 27, 2022, within the 60-day period that the Court had set in its Order of March 1, 2022.  (Doc. 24 at 12.)." Doc. 36 at 1. The Court's prior Order directed the Clerk to mail a request that the defendants waive personal service, pursuant to Federal Rule of Civil Procedure 4(d). *See* doc. 24 at 9-12. The Court's Order directed the Clerk to require that the waiver be returned no later than sixty days from the date of mailing. *See id.* at 12; *see also* Fed. R. Civ. P. 4(d)(1)(F). The Rules also provide that "a defendant *who timely returns a waiver* need

not serve an answer to the complaint until 60 days after the request was sent . . . ." Fed. R. Civ. P. 4(d)(3). The Clerk noted that the request for waiver was mailed to the named defendants on March 1, 2022. *See* docket entry dated March 1, 2022. No service waiver has been returned, however. *See generally* docket. Despite lack of any formal waiver, by moving to dismiss without raising any defense based on insufficient process or insufficient service or process, defendants have waived any such defenses. *See, e.g.,* Fed. R. Civ. P. 12(h)(1)(A); *see also, e.g., Perlman v. Delisfort-Theodule*, 451 F. App'x 846, 848 (11th Cir. 2012) ("A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent." (internal quotation marks and citation omitted)).

Despite the ambiguous status of service, it is clear that defendants' Motion to Dismiss was not untimely. In the absence of an executed waiver, the Federal Rules require that a defendant serve a responsive pleading, including a motion to dismiss, "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). But for defendants' constructive waiver of service by filing their Motion to Dismiss, there is no indication that they were *ever* served with a

summons and complaint. *See generally* docket. To the extent that their deadline to file a responsive pleading had even accrued when the Motion to Dismiss was filed, it had certainly not run. To the extent that Jackson contends that defendants were obligated to file an answer, despite moving to dismiss, he is mistaken. *See* Fed. R. Civ. P. 12(a)(4)(A). Since it is clear that defendants have not "failed to plead or otherwise defend," Fed. R. Civ. P. 55(a), Jackson's Motion for Default Judgment should be **DENIED**. Doc. 30.

Jackson's Motion for Sanctions is a legally incoherent rehash of his Motion for Default Judgment. He again states, incorrectly, that defendants have "ignore[ed] previous court orders to answer and respond to initial complaint . . . ." Doc. 35 at 1. Even if defendants had failed to respond to Jackson's Complaint, however, his remedy would be an entry of default, and possible default judgment, pursuant to Rule 55. Jackson attempts to transform his mistaken contentions concerning default into a basis for sanctions by asserting that the alleged noncompliance was "[i]n such a way as to cause 'annoyance,' embarrassment, oppression, or

undue burden or expense." Doc. 35 at 1 (citing Fed. R. Civ. P. 26(c)[5]).

"Pure applesauce." *King v. Burwell*, 576 U.S. 473, 507 (2015) (Scalia, J.

dissenting). Since Jackson's Motion for Sanctions lacks any arguable

basis in law, it is **DENIED**. Doc. 35.

## IV. Conclusion

In summary, defendants' Motion to Dismiss should be **GRANTED,**

**in part**, and **DENIED, in part**. Doc. 27. It should be **DENIED** to the

extent that it seeks dismissal of Jackson's Amended Complaint, pursuant

to § 1915(g)'s three-strikes provision. It should be **GRANTED** to the

extent that it seeks dismissal because Jackson failed to exhaust available

administrative remedies before filing this suit, pursuant to § 1997e(a).

Jackson's Amended Complaint should, therefore, be **DISMISSED**

without prejudice. Doc. 16. *See Greene v. Rosier,* 2013 WL 596346, at *1

n. 1 (S.D. Ga. Feb. 15, 2013) (Bowen, J.) (noting that "although it is at

least arguable that a district court has authority to dismiss a prisoner's

claims with prejudice for failure to exhaust administrative remedies, it

is the practice of this Court to dismiss such cases . . . without prejudice,

---

[5] The language Jackson cites is taken from Rule 26(c)(1), which authorizes courts to enter protective orders against discovery requests "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

in order that the prisoner-plaintiff may attempt to properly exhaust administrative remedies."). His Motion for Default Judgment should be **DENIED**. Doc. 30. Finally, his Motion for Sanctions is **DENIED** as frivolous. Doc. 35.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 1st day of June, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA